**UNITED STATES DISTRICT COURT**        **O**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **ALFRED MONTOYA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | **CIVIL ACTION NO. L-08-39** |
| | § | |
| **FEDEX GROUND PACKAGE SYSTEM** | § | |
| **INC, *et al*,** | § | |
| | § | |
| **Defendants.** | § | |

**OPINION AND ORDER**

Pending before this Court is Defendant's Motion to Dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Dkt. No. 22].[1]  Upon due consideration of the pleadings, responsive filings, and the governing law, the Court **GRANTS** Defendant's Motion.

**I.     BACKGROUND**

Montoya's current case against Fed Ex Ground Package System, Inc. ("FedEx") was filed on April 1, 2008.  However, this is not Montoya's first claim against FedEx before this Court.  In June 2004, Montoya filed suit against some of the same Defendants, including FedEx, alleging somewhat similar injuries.  Because a clear understanding of Montoya's alleged injuries is necessary to the disposition of this Motion, the Court will recite relevant facts, as presented in Montoya's first amended complaint filed in this case, and treat them as true[2] for the purposes of Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[1] "Dkt. No." refers to entries in the Court's electronic filing system, in civil action number L-08-39.
[2] In analyzing Montoya's complaint, the Court treats all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger*, 188 F.3d 322, 324 (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).

A.        **Montoya's Allegations**

Plaintiff Alfred Montoya is an independent contractor who entered into an agreement with Defendant FedEx to provide package delivery services.   According to Montoya, the agreement required Montoya to pick up and deliver packages to an assigned delivery service area.  [Dkt. No. 2, ¶ 11].   Montoya was obligated to provide his own delivery vehicles and employee drivers.  [*Id.*, ¶ 13].  Montoya's compensation was "based upon the number of package pick ups and deliveries" that he and his employees made within his service area.  [*Id.*, ¶ 14].  In June 2004, Montoya filed suit against FedEx in the 111th District Court of Webb County, Texas, to recover economic losses for the alleged removal of part of his service area.  [*Id.*, ¶¶ 22, 23]. Montoya's suit was thereafter removed to this Court.[3]  [*Id.*, ¶ 24].

In his current complaint, Montoya alleges the following occurred after he filed the original suit: In July of 2004, Rodger Cabello ("Cabello") and Eddie Garza-Gongora ("Garza"), both employees for FedEx, insisted that Montoya fire one of his employees.  [*Id.*, ¶ 34.]  As a result, Montoya asked Enrique Lozano ("Lozano") and Humberto Escobedo ("Escobedo"), similarly situated independent contractors, to help him cover his service area until he could find a replacement driver.[4]  [*Id.*, ¶¶ 33, 35].  According to Montoya, Cabello and Garza "forbade or coerced" Lozano from helping Montoya.  [*Id.*, ¶ 37].  Lozano subsequently forbade his drivers from working for Montoya.  [*Id.*, ¶ 47].  While Montoya sought to subcontract his pickups and deliveries to similarly situated independent contractors, Defendants Cabello and Garza "withheld their approval" of permanent and temporary drivers sought by Montoya.  [*Id.*, ¶ 38].  At some point later in July of 2004, Cabello informed Montoya that he would receive no additional new

---

[3] Once removed, the suit was filed as cause number 5:04-cv-101.  Hereafter, the Court will refer to entries in the suit by "L-04-101 Dkt. No." and to the suit itself as "the original suit."
[4] On June 18, 2008, previously-named Defendants Enrique Lozano, Humberto Escobedo, and Gerardo Rodríguez were dismissed from this suit.  [Dkt. No. 19].

or available routes to serve "with the pendency of the Federal suit," and that FedEx would consider adding a new route "if he were to drop his federal lawsuit."  [*Id.*, ¶¶ 42, 43].

Thereafter, in March or April of 2005, Cabello allegedly told Montoya that FedEx would not renew his contract "because of the Federal litigation [. . .] instituted and maintained by Montoya."  [*Id.*, ¶ 53.  In order to "retaliate against [Montoya] and tarnish his work record," Montoya was assigned the picks ups and deliveries of Lozano, Escobedo, and Gerardo Rodriguez ("Rodriguez"), without having received approval for replacement drivers.  [*Id.*, ¶ 54].  This resulted in an "overloaded" service area for Montoya.  [*Id.*].  Moreover, Cabello and Garza concealed and manipulated packages to "reflect that Montoya or his employees had not attempted or made deliveries[.]"  [*Id.*, ¶ 55].  These acts were allegedly designed to "deprecate Montoya's performance record."  [*Id.*, ¶ 57].  Further, Cabello denied Montoya's access to scanners and conveyors necessary for the completion of his route.  [*Id.*, ¶ 60].

In June of 2005, Cabello and Garza removed half of Montoya's service area and gave this area to Lozano and Escobedo.  [*Id.*, ¶ 61.]  According to Montoya, this reconfiguration had the effect of "reducing [his] picks up and deliveries."  [*Id.*, ¶ 52].  Before or while this reduction occurred, Montoya obtained new vehicles to serve his service are.  [*Id.*, ¶¶ 50, 62].

In January of 2006, this Court granted FedEx's Motion for Summary Judgment in the original suit.  [L-04-101 Dkt. No. 28].  Judgment in the original suit became final on May 3, 2006.  In May of 2006, Garza terminated Montoya's contract with FedEx.  [Dkt. No. 2, ¶ 63].  His routes were subsequently assigned to Lozano, Escobedo, and Rodriguez.  [*Id.*, ¶ 64].

On April 1, 2008, Montoya filed the pending suit in federal district court.  [Dkt. No. 1].  In his First Amended Complaint, Montoya claims that FedEx employees Cabello and Garza "enlisted the aid" of Lozano, Escobedo, and Rodriguez to intimidate, harm, harass, and coerce

him into "desisting" from his original suit, in violation of 42 U.S.C § 1985(2).  [Dkt. No. 2, ¶ 33].  Montoya seeks damages for the alleged violation of his rights under section 1985(2), as well as for monies "he would have otherwise earned had his contract been renewed," losses resulting from capital expenditures for motor vehicles, and losses resulting from the loss of customer good will and his professional reputation.  [*Id.*, p. 11].  Montoya also seeks attorney's fees and costs of court.  [*Id.*].

On June 23, 2008, FedEx filed the Motion to Dismiss now before the Court, arguing, first, that Montoya's complaint on its face fails to allege a violation under section 1985(2), [Dkt. No. 22, p. 11], and, second, that Montoya's claim is barred by the pertinent statute of limitations.[5]  [Dkt. No. 22, p. 5].

## II.    DISCUSSION

### A.    12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Dismissal is warranted when it is clear that a plaintiff can "prove no set of facts in support of his claim that would entitle him to relief."  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.1990)). In evaluating the sufficiency of the pleadings, a court treats all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff."  *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir.1996)). The court does not determine whether the plaintiff will ultimately prevail, but rather, whether he may present evidence in support of his claim.  *Id.*  A court should therefore not dismiss a claim unless

---

[5] FedEx has failed to comply with Federal Rule of Civil Procedure 10(b), which provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." While Defense counsel for FedEx has used roman numerals and alphabetical letters to organize the Motion to Dismiss, the majority of paragraphs have not been numbered. Defense counsel for FedEx will do well to review the pleading requirements under the Federal Rules of Civil Procedure before submitting future pleadings with the Court.

the plaintiff would not be entitled to relief under "any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir.1996)).

**B.      Section 1985(2)**

FedEx asserts that Montoya has failed to state a claim under 42 U.S.C. § 1985(2).   In pertinent part, section 1985(2) reads as follows:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testimony to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having attended or testified . . . .

42 U.S.C. § 1985.

In order to prevail on a section 1985(2) claim, a plaintiff must establish: (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) causes injury to the claimant. *Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. August 8, 2008) (unpublished opinion) (citing *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988)).   Although originally interpreted to require a showing of racial or other class-based animus, section 1985(2) has since been expanded to protect any party, witness or juror.  *Kush v. Rutledge*, 460 U.S. 719, 723-27 (1983).   Additionally, section 1985(2) has been expanded to include a claim of purely economic loss.  *Kinney v. Weaver*, 367 F.3d 337, 353 (5th Cir. 2004) (citing *Haddle v. Garrison*, 525 U.S. 121, 126 (1998)).  Assuming that Montoya has properly alleged a conspiracy between two or more persons, Montoya meets these requirements.

What appears to remain an issue is whether physical presence is now a requirement. Both FedEx and Montoya premise their argument on this requirement.  Earlier cases interpreting

1985(2) have held that physical presence in a federal court proceeding, either as a witness or party, is required.  For example, in *Kimble*, the Fifth Circuit noted that, under the plain language of the statute, a plaintiff "must allege that they were injured on account of having attended or testified in federal court."  *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347-8 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110 (1981).[6]  Similarly, in *Deubert*, the Fifth Circuit noted that section 1985(2) was intended to "protect those parties who were physically present to attend or testify in a federal court; the statute was not intended to create a federal tort remedy for economic retaliation against those who pursue work-related claims."  *Deubert v. Gulf Federal Sav. Bank*, 820 F.2d 754, 758 (5th Cir. 1987).[7]  The *Deubert* court thus established two premises; first, that a plaintiff must allege physical presence in a federal court proceeding, and thus also that merely filing or prosecuting a lawsuit is not protected under section 1985(2); and, second, that alleged economic retaliation is also not protected.

However, recently the Fifth Circuit has, albeit in an unpublished opinion and in dicta, noted that *Deubert* has been overruled by *Kinney* in its "fundamental premises."  *Mitchell*, 2008 WL 3244283, at *3.  It is unclear, however, which of these fundamental premises have been overruled.  The *Mitchell* court noted that "if the theory undergirding the result in [*Kimble* and *Deubert*] was physical presence, and physical presence is no longer required, then those cases are no longer good law."  *Id*. at *5.  In *Mitchell*, the plaintiff alleged that the defendant's actions were designed to prevent him from "prosecuting" his lawsuit while it was pending in federal court.  *Id*. at *2.  The *Mitchell* court found that the plaintiff properly stated a claim under section

---

[6] In *Kush v. Rutledge*, 460 U.S. 719 (1983), the Supreme Court overruled *Kimble* to the extent that it required a plaintiff to allege a racial or class-based animus in a section 1985(2) suit.  *Mitchell*, 2008 WL 3244283, at *3, n. 1 (citing *Perkins v. Gregg County*, 1995 WL 836051, at *5 (E.D. Tex. Dec. 6, 1995)).
[7] Because *Kinney* established that economic retaliation is protected under section 1985(2), the *Mitchell* court noted this proposition "irrevocably [eroded] the holdings of *Kimble* and *Deubert*, which are premised on the notion that economic retaliation was not the aim of the Reconstruction Congress and therefore could never be sufficient injury."  *Id*. at *4.  The Court therefore recognizes that *Deubert* has been overruled by *Kinney* to the extent that it did not extend protection to claims of economic retaliation.

1985(2), in part, because he alleged that the defendants sought to "deter him from prosecuting his case by for force, intimidation, or threat." *Id.* at *5. The *Mitchell* court thus seemingly suggested that the act of prosecuting a lawsuit, without alleging physical presence in a federal court, is protected under section 1985(2).

In an apparent effort to clarify the requirements of section 1985(2), the *Mitchell* court concluded by stating that section 1985(2) provides a remedy "where individuals conspire to exert untoward external pressure on parties or witnesses because of their participation in judicial proceedings." *Id.* at *4. The *Mitchell* court also noted that "[t]he conspiracy must seek to deprive the plaintiff of his right in court by physical or economic means." *Id.* Finally, the *Mitchell* court reiterated that section 1985(2) requires a "nexus between the alleged conspiracy and a proceeding in federal court." *Id.* Arguably, then, a plaintiff's initiation of, or participation in, a federal lawsuit is a sufficient nexus between the alleged conspiracy and a proceeding in federal court. [8]

In this case, FedEx asserts that Montoya "has not alleged any injury as a result of having attended or testified in a federal court proceeding." [Dkt. No. 22, p. 11]. Rather, FedEx asserts that virtually all of Montoya's allegations relate to maintaining a federal suit. [Dkt. No. 36, p. 6]. Montoya alleges that Defendants conspired to injure him "because of the federal suit," [Dkt. No. 2, ¶ 32]; "due to the pendency" of the suit, [*Id.*, ¶ 48]; because he "refused to drop" the suit, [*Id.* ¶ 52]; "based upon" the suit, [*Id.*, ¶ 63]; and "for the maintenance" of the suit. [*Id.*, ¶ 67]. Additionally, Montoya alleges that Defendants acted in order to coerce him "into desisting from the pursuit [of] his claim." [*Id.*, ¶ 33].

---

[8] Despite the *Mitchell* court's interpretation of the requirements under section 1985(2), it remains that the Fifth Circuit has not established precedent supporting the proposition that section 1985(2) affords protection to parties or witnesses who were not physically present in federal court.

On the other hand, Montoya asserts that he satisfied the pleading requirements by stating that he "provided testimony at a deposition on or about February 23, 2005." [Dkt. No. 35, ¶ 9]. In essence, Montoya has alleged that FedEx retaliated against him for filing and prosecuting his lawsuit, as well as for providing deposition testimony. In light of the Fifth Circuit's holding in *Mitchell*, it is unclear whether the physical presence element is still a requirement under section 1985(2). But assuming both that the physical presence element of section 1985(2) is no longer required and that Montoya has properly alleged a conspiracy, Plaintiff has arguably alleged a claim under section 1985(2).[9]

## C.      Statute of Limitations

Even if Montoya has properly alleged a claim under 1985(2), however, the face of his complaint shows that his claim is barred by the statute of limitations. As a preliminary matter, this Court notes that a statute of limitations defense may be asserted in a 12(b)(6) motion. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). As noted by the Fifth Circuit, a statute of limitations defense supports dismissal under Rule 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Id*. (citing *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-379 (5th Cir. 2002)).

But section 1985 does not include a statute of limitations. For a claim under this section, therefore, a federal court "must apply the state la5trw statute of limitations that would govern an analogous state law cause of action." *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed.Appx. 363, 367 (5th Cir. 2008) (unpublished per curiam) (citing *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987)). More specifically, in *Helton*, the Fifth Circuit held that a section

---

[9] FedEx also asserts that Montoya has failed to state a claim under section 1985(2) because "all post-limitation allegations were made solely against [FedEx], an entity which cannot conspire with itself as a matter of law," and also because Montoya has failed to allege a "meeting of the minds sufficient to establish a conspiracy for this claim." [Dkt. No. 22, p. 1]. For the reasons set forth in the Court's discussion of the pertinent statute of limitations, however, the Court need not resolve this issue.

1985 claim is "deemed analogous to Texas tort actions, and therefore, the applicable limitations period is the two years." *Helton*, 832 F.2d at 334 (quoting TEX. CIV. PRAC. & REM.CODE. ANN. § 16.003). However, the date that a claim accrues is governed by federal, and not by state, law. *Id*. For a federal cause of action, the limitations period accrues when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id*. at 334-5 (citing *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980) (noting that cause of action accrues when plaintiff has suffered an injury "supporting the maintenance of a suit to enforce his claim.")).

In this case, Montoya states that he sustained "economic losses consisting of monies he would have received, but for the actions of the Defendants," including capital expenditures for motor vehicles, loss of customer goodwill, and harm to his professional reputation. [Dkt. No. 2, ¶ 67]. The task before this Court is to determine when Montoya knew, or had information to know, that he had sustained these "economic losses" in retaliation for the original suit.

Montoya alleges that, beginning in July of 2004, Defendants Cabello and Garza, with the aid of Escobedo, Lozano, and Rodriguez, attempted to intimidate, ridicule, harass, and coerce him into "desisting" from the pursuit of his claim. [*Id*., ¶ 33]. At the insistence of Cabello and Garza, Montoya fired a long-time employee and, as a result, was required to seek another driver for his service area. [*Id*., ¶ 34]. Despite Montoya's requests, Cabello and Garza withheld approval for replacement drivers. [*Id*., ¶ 38]. Lozano later informed Montoya that Cabello and Garza "forbade or coerced" him from helping Montoya obtain a replacement driver. [*Id*., ¶ 37]. The resulting shortage of drivers available to Montoya caused him to subcontract picks ups and deliveries to other individuals. [*Id*., ¶ 39]. Because Montoya also alleges that the number of picks ups and deliveries were the basis of his compensation, [*Id*., ¶ 14], it is clear that Montoya

had reason to know, in July of 2004, that he was sustaining economic losses due to the acts of FedEx.

Thereafter, in mid to late July of 2004, Cabello allegedly informed Montoya that with the pendency of the suit, Montoya "would receive no more new or available routes to service." [*Id.*, ¶ 42]. According to Montoya, Cabello also "intimated" that if Montoya dropped his suit, FedEx "would consider adding on a new route to [his] service." [*Id.*, ¶ 43]. These statements gave Montoya reason to know that FedEx effectively sought to retaliate against him for his lawsuit. It is clear, therefore, that, in late July of 2004, Montoya had reason to know that he was sustaining economic losses in retaliation for his lawsuit.

Moreover, the face of Montoya's complaint reveals that he had reason to know of additional economic losses, resulting from the alleged retaliation of his original suit, in 2005. Although they withheld approval for Montoya's additional drivers, Cabello and Garza assigned him additional delivery and pick up duties. [*Id.*, ¶ 54]. Consequently, Montoya's service area allegedly became "overloaded." [*Id.*]. Also, Cabello and Garza allegedly concealed scanning equipment from Montoya and scanned packages to make it appear as though Montoya had not attempted to make assigned deliveries. [*Id.*, ¶¶ 55-56]. Montoya was also allegedly denied access to scanners and conveyors which were necessary for the delivery of packages in his service area. [*Id.*, ¶ 60]. According to Montoya, these acts were designed to "tarnish" and "deprecate" his performance record. [*Id.*, ¶¶ 54, 57]. Finally, at the insistence of Cabello and Garza, Montoya obtained new vehicles and equipment. [*Id.*, ¶ 49]. The resulting "capital expenditures for motor vehicles" allegedly caused him to sustain "economic losses consisting of monies" he would have otherwise received. [*Id.*, ¶ 67].

Even if the foregoing is insufficient to establish that Montoya knew or should have known, sometime during March or April of 2005, Cabello informed Montoya that FedEx would not renew his contract because of the federal suit.  [*Id.*, ¶ 53].  Thereafter, in June of 2005, Montoya alleges that his "picks ups and deliveries were reduced" after Cabello and Garza removed half of his service area.  [*Id.*, ¶ 52].  According to Montoya, this act was also done because he refused to drop his suit.  [*Id.*].  It is apparent, therefore, that Montoya had reason to know at the very latest in June of 2005 that FedEx was causing him economic losses in retaliation for his federal suit.

Montoya filed suit on April 1, 2008.  Therefore, in order to avoid the statute of limitations bar to his claim, Montoya must have alleged that the earliest he became aware of his injury was April 1, 2006.  However, the face of Montoya's complaint reveals that he had reason to know that he was sustaining economic losses in retaliation for his suit in July of 2004 through June of 2005.  Accordingly, even if Montoya properly alleged that FedEx injured him to deter him from, or alternatively, in retaliation for, prosecuting the original suit, Montoya's claim is barred by the statute of limitations.

In response to FedEx's Motion, Montoya asserts that "the incidents of harassment do not result in injury until Plaintiff loses his business contract with [FedEx] on or about May 21, 2006," the date that Montoya's contract was actually terminated.  [Dkt. No. 35, ¶ 6].  This assertion is without merit.  Montoya cannot avoid the limitations period by stating that his termination was the only act causing him injury.  Indeed, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Helton*, 832, F.2d at 335 (citing *Kadar Corporation v. Milbury*, 549 F.2d 230, 234 (1st Cir. 1977)).  In *Helton*, the plaintiff sought to avoid the statute of limitations bar by asserting that the

final act of two defendants was the "last overt act committed in furtherance of the conspiracy against him." *Id*.  However, as the Court noted, "[t]o permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Helton*, 832 F.2d at 335 (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (C.A.N.Y. 1980)).  Moreover, Montoya's pleadings have provided this Court with no basis for tolling the statute of limitations.

## III.     CONCLUSION

In summary, while Montoya may have stated a claim under section 1985(2), his claim is barred by the statute of limitations.  Montoya has alleged that, in July of 2004, Defendants Cabello and Garza prevented him from obtaining drivers to pick up and deliver packages in his service area.  The number of picks up and deliveries completed by Montoya constituted the basis of his compensation.  Accordingly, it is clear that Montoya had reason to know, as early as July of 2004, that he was sustaining economic injury in retaliation for his suit.  As discussed above, other acts occurred throughout 2005 which gave him reason to know his was being injured in retaliation for his suit.  However, he did not file suit until April 1, 2008, well after the limitations period ended.  Therefore, this Court finds that Montoya's claim is barred by the statute of limitations.

For the reasons stated above, FedEx's Motion to Dismiss is **GRANTED**.  Accordingly, Montoya's claim brought under 42 U.S.C. § 1985 is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

Done this 2nd day of March, 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**